George L. Cobb, J.
In this CPLR article 78 proceeding, petitioners seek to annul and vacate the grant by the respondent Commissioner of Environmental Conservation and his department of a permit issued pursuant to ECL 15-0501 which authorized the installation of a storm water drainage outfall structure on the west bank of the Croton River to serve the proposed athletic field and parking complex of the intervenorrespondent Croton-Harmon Union Free School District. Also pending before the court are petitioners’ motions, made pursuant to CPLR 7805, for stays of the grant of that permit pending further proceedings herein.
The school district plans to construct new athletic and recreation facilities on a site which is adjacent to the gorge of the Croton River in Westchester County. Since the plans contemplate substantial regrading and the installation of a storm water drainage outfall structure on the west bank of the Croton River, the school district plans to "change, modify or disturb the course of * * * [the Croton River] or remove sand and gravel or other materials therefrom” (ECL 15-0501, subd 3, par a), and, under these circumstances, the statute says it should obtain a permit from the Department of Environmental Conservation.
Upon the school district’s application for such a permit, the department conducted a discretionary hearing and thereafter, upon specific findings and conclusions, such was granted. The petitioners here attack the grant of the permit upon certain technical grounds and upon the broader basis that the project will cause unreasonable and irreparable damage to the "fragile” and unique gorge of the Croton River.
It is true that, in deciding how our basic resources shall be utilized, any failure now to give proper consideration to environmental considerations may well have serious and, perhaps, catastrophic future consequences. However, significant advances in the environmental area usually carry with them a corresponding "social cost” (see concurring opn in New York *953 Tel. Co. v New York City Tr. Admin., 44 AD2d 784, 786) and our somewhat belated recognition of the relative importance of environmental considerations does not demand that other considerations, historically considered to be determinative, must now be ignored. As pointed out by Mr. Justice Kane in Matter of Ton-Da-Lay v Diamond (44 AD2d 430, 438), "the issue of 'damage to the environment’ must be relegated to its proper place of importance within the statutory framework peculiar to the particular application under review”. The Legislature of this State has assigned to the respondents the decision as to whether or not any damage to the environment attributable to the installation of the proposed outfall outweighs other pertinent considerations, and, accordingly, the essential issue now before the court is the familiar one of whether or not the respondents exercised the discretion vested in them in the manner prescribed by law.
The petitioners herein claim that the action taken by the respondents was not warranted by the evidence in the record. By express statutory provision (ECL 15-0903, subd 2, par g), the respondents’ action must be founded "upon competent, material evidence which is substantial in view of the entire record”. The court has reviewed the record of this case including the accompanying exhibits and finds that the statutory tests have been met. There are, however, a number of objections which require further comment.
During the course of the departmental proceedings, the commissioner by written order directed, among other things, that "the Applicant demonstrate that he has considered alternative sites and that the proposed site is the most appropriate”. The petitioners herein contend that the school district did not satisfy this requirement.
By the express terms of sections 401 (subds 1, 2) and 1709 (subd 6) of the Education Law, the power to select school sites is vested in the board of education of the school district (Matter of Delfino v Nyquist, 19 AD2d 687) and no statute demands or requires that the power be shared with the respondent commissioner. The pertinent provision of the Environmental Conservation Law (ECL 3-0301, subd 1) says instead that "[i]t shall be the responsibility of the department, in accordance with such existing provisions and limitations as may be elsewhere set forth in law * * * to carry out the environmental policy of the state” (emphasis added). The foregoing statutory pattern suggests that neither the commis *954 sioner himself nor his hearing examiner could condition the grant of the permit upon their being satisfied that the board of education of the instant school district had selected the "most appropriate” site and the court does not construe the commissioner’s aforesaid order as so directing. Instead, the court believes that the commissioner could quite properly, and did, demand only that the circumstances surrounding the selection of this site as opposed to any other site be revealed so that the reasonableness of the permit application could be properly weighed. The school district did comply with the commissioner’s order as so construed by introducing testimony before the hearing examiner which demonstrated that it had considered alternative sites and that, from its standpoint, the proposed site was the most appropriate.
The petitioners also argue that the departmental rules which establish standards for the issuance of the instant kind of permit are inconsistent with the policy of the State as contained in the New York Constitution (art XIV, § 4) and Environmental Conservation Law (ECL 1-0101), but appellate authority has ruled otherwise (Matter of Hamilton v Diamond, 42 AD2d 465, 467).
Lastly, petitioners point out that they were denied an opportunity to examine or have access to the hearing officer’s proposed findings, conclusions and recommendations before the respondent commissioner acted upon them and cite in support of that objection Matter of Sorrentino v State Liq. Auth. (10 NY2d 143). In the last cited case, the court held that a licensee charged by the State Liquor Authority with a violation of the Alcoholic Beverage Control Law was entitled to a copy of the hearing officer’s report and an opportunity to controvert its contents before the authority took action upon the charge.
The right of a party in an administrative proceeding to preview a proposed decision has been generally recognized in the Federal practice (see 2 Am Jur 2d, Administrative Law, § 431), but in New York such right has apparently been recognized only in disciplinary proceedings before the State Liquor Authority. The court in Matter of Sorrentino (supra, pp 149, 150) refused to consider whether or not a party’s right to predecision viewing was invariably required in an administrative proceeding and this Justice believes the rule of Matter of Sorrentino (supra) is not applicable to the instant kind of proceeding.
*955 Any remaining objections do not require comment, and, accordingly, the petition will be dismissed. Such disposition renders moot the motions for a stay.